United States District Court
Southern District of Texas
FILED

OCT 1 5 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE MARTIN OVIEDO-SIFUENTES, )
)
v. ) C.A. B-02-198
)
CHARLES ARENDALE, )
  ACTING DIRECTOR, HLG/DO and )
)
JOHN ASHCROFT, ATTORNEY )
  GENERAL OF THE UNITED STATES. )
_____ )

**PETITION FOR WRIT OF HABEAS CORPUS**

Jose Martin Oviedo-Sifuentes, ("Mr. Oviedo"), by and through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr,* 121 S.Ct. 2271 (2001).

**I. JURISDICTION AND VENUE**

1. Petitioner Jose Martin Oviedo is under an administratively final order of removal, (Petitioner's Exhibit A, incorporated by reference), which order places significant restrictions on his liberty not shared by the populace at large, within the meaning of *Jones v. Cunningham,* 371 U.S. 236, 240 (1963).

2. Respondent Arendale maintains his offices, and Petitioner's removal proceedings were conducted, in Harlingen, Texas, within the jurisdiction of this Court.

**II. THE PARTIES**

3. Jose Oviedo-Sifuentes has been a lawful permanent resident, ("LPR"), since 1994. He resides in Houston, Texas.

4. Respondent Charles Arendale is the Acting Director HLG/DRO of the Harlingen, Texas, office of Immigration and Naturalization

Service. He is sued in his official capacity only.

5. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

### III. THE FACTS

6. Jose Oviedo is a native and citizen of Mexico. He entered the United States as a lawful permanent resident on or about November 23, 1994 and has resided here continuously since that date. His father and two minor children are United States citizen, and his mother and seven siblings are all lawful permanent residents. He has a history of steady employment, and supports his dependents.

7. On or about July 13, 1999, pursuant to a plea bargain, Mr. Oviedo pled guilty in Refugio County, Texas, to the offense of (simple) possession of less than one gram of cocaine, which had been found in the vehicle which he was driving. Adjudication of guilt was deferred and he was placed on probation for two years. [1]

8. Although IIRIRA, which enacted 8 U.S.C. §1101(a)(48)(A), removing the element of finality from the definition of conviction, had converted most deferred adjudications in convictions, *Matter of Manrique* was not based on a lack of finality of the criminal proceedings, but on an analogy to the FFOA, which precluded a finding that there was a "conviction" in such cases.

9. Also on July 13, 1999, an NTA was issued. It alleged, and Mr. Oviedo conceded, the above facts relating to nationality and entry.

---

[1] Deferred adjudication was previously not considered to be a conviction. *Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990). *See also, Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). Nor, under *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), was deferred adjudication for the offense of simple possession of a controlled substance considered to render one subject to deportation.

It also alleged, and he denied, that he had been "convicted" of possession of cocaine.[2] However, the Judge found that all allegations, and the charge, had been established, and ordered his removal to Mexico. (Petitioner's Exhibit B, incorporated by reference). Mr. Oviedo filed a timely appeal.

10. He urged to the BIA that he fell within the policy exception carved out by *Matter of Manrique, supra*, and that proceedings should be terminated, notwithstanding *Matter of Roldan*, Interim Decision No. 3377 (BIA 1999), wherein the Board concluded that the policy exception adopted in *Manrique* had been superceded by (new) 8 U.S.C. §1101(a)(48)(A), which redefined "conviction" for immigration purposes. Said decision was disapproved by the Ninth Circuit in *Lujan-Armendariz v. INS* and *Roldan-Santoyo v. INS*, 222 F.3d 728 (9th Cir. 2000), on the grounds that it deprives residents such as Mr. Oviedo of the Equal Protection of the laws.

11. On December 17, 2001, the Presiding Judge in Mr. Oviedo's criminal case entered the following Order, (Petitioner's Exhibit C, incorporated by reference):

> It is therefore hereby ORDERED, ADJUDGED AND DECREED that this cause be and is hereby [] DISMISSED, and that Jose M. Oviedo be DISCHARGED from deferred adjudication, and that Jose M. Oviedo is hereby released from all penalties and disabilities resulting from the deferred adjudication in this cause.

---

[2] Deferred adjudication was previously not considered to be a conviction. *Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990). *See also, Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). This was changed by IIRIRA, which enacted §101(a)(48)(A), removing the element of finality from the definition of conviction. However, *Manrique* was not based on a lack of finality of the criminal proceedings, but on an analogy to the FFOA, which precluded a finding that there was a "conviction" in such cases. Therefore, Respondent denied that he had been "convicted" of the offense.

12. In *Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001) the Fifth Circuit held that, for purposes of the Sentencing Guidelines, whether an offense was a felony, and therefore, an aggravated felony, would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *K-V-D-,* Int. Dec. 3422 (BIA 1999), reaffirming *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995), under which this question was resolved by analogy to federal law. However, the criticism of *K-V-D-* was clearly dicta. [3]

13. Moreover, *Hernandez-Avalos* did not hold that **all** convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. However, under state law, Mr. Oviedo's deferred adjudication does not constitute a conviction. He urges that it contravenes Due Process and Equal Protection to conclude that state law should be followed in determining whether an offense is a felony, and therefore, "illicit trafficking in a controlled substance," within the meaning of 8 U.S.C. §1101(a)(B), but that state law **not** be followed in determining whether deferred adjudication constitutes a conviction for immigration purposes.

14. Nonetheless, Mr. Oveido's appeal was dismissed by the BIA on September 4, 2002. The Board gave no consideration to Mr. Oveido's arguments on appeal, but simply noted that it was affirming "the results of the decision below. (Exhibit A).

---

[3] As the Court noted therein, *id.,* at 509:

[I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we would hold that the BIA's interpretation of section 924(c) [in *Matter of K-V-D-*] is plainly incorrect and that Hernandez was an aggravated felon.

## V. THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

### 1. STATUTORY CONSTRUCTION

Mr. Oviedo first urges that, as a question of law, *Matter of Roldan* and *Matter of Salazar* were incorrectly decided, and that 8 U.S.C. §1101(a)(48)(A) was not intended to and did not legislatively over-rule *Matter of Manrique, supra*. *See,* Dissenting Opinions of Board Member Rosenberg, in which Board Members Villageliu and Espenoza joined, in *Salazar v. Trominski,* CA B-02-045, and of Board Member Anthony Moscato in which Board Member Villageliu joined. (Exhibit A, 23 I&N Dec. at 237-252). He also urges that where, as here, deferred adjudication was completed and the case dismissed, it is no longer a conviction. *See, Matter of Rodriguez-Ruiz,* 22 I&N Dec. 1378 (BIA 2000) (BIA cannot go behind order vacating conviction).

### 2. EQUAL PROTECTION
#### a. FEDERAL FIRST OFFENDER ACT

Mr. Oviedo next asserts that, for the reasons set forth in *Lujan-Armendariz, supra,* it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

#### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Oviedo also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his

case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth Circuit, he would not be subject to removal at all, whereas in the Fifth Circuit, not only is he subject to removal, but he is considered to have been convicted of an aggravated felony, and is ineligible for any form of relief.

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Oviedo has a fundamental liberty interest in being able to live and work in the U.S., and to remain here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar v. Trominski, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Oviedo enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Oviedo asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary

relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4.  PROCEDURAL DUE PROCESS

Mr. Oviedo also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Oviedo retroactively converts a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation.  Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.*  (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law,

there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court recently held in *BMW of North America v. Gore,* 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Oviedo, there can be no question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra,* and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra.* And, as in *BNW of North America v. Gore, supra,* it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [4]

---

[4] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge,* 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

9

## 5. INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Oviedo urges that the instant order violates international law, and treaty obligations with Mexico, his country of origin. *See, Nicholson v. Williams*, ____ F.Supp.2d ____, (E.D.N.Y. March 18, 2002), 2002 WL 448452, at *78: [5]

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself.

*See also, Beharry v. Reno*, 183 F.Supp.2d 584 (E.D.N.Y. 2002) (Where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction). [6]

Respectfully Submitted,

*[signature: Lisa S. Brodyaga]*

Lisa S. Brodyaga, Attorney  
17891 Landrum Park Road  
San Benito, TX 78586  
(956) 421-3226  
(956) 421-3423 (fax)  
Fed. ID. 1178  
Texas Bar 03052800  

Thelma O. Garcia, Attorney  
301 E. Madison  
Harlingen, TX 78550  
(956) 425-3701  
(956) 428-3731 (fax), and  

---

[5] Although *Nicholson* involved the removal of children from the parent, rather than removal of the parent from the child, the principles are the same.

[6] *Beharry* concluded that relief was still available where an offense was committed before IIRIRA, but the guilty plea did not occur until after its enactment.

## VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with Petitioner's case and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.


_____
October 14, 2002

## CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the foregoing, with exhibits, was personally delivered to the office of Lisa Putnam, SAUSA, 1709 Zoy St., Harlingen, Texas, this 15th day of October, 2002.

```
            UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                BROWNSVILLE DIVISION
```

JOSE MARTIN OVIEDO-SIFUENTES,         )
                                      )
                                      )
v.                                    )        C.A. **B-02-198**
                                      )
                                      )
CHARLES ARENDALE,                     )
   ACTING DIRECTOR, HLG/DO and        )
                                      )
JOHN ASHCROFT, ATTORNEY               )
   GENERAL OF THE UNITED STATES.      )
_____)


EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5201 Leesburg Pike. Suite 1300
Falls Church, Virginia 22041

SEP 10 2002

| | |
|---|---|
| Garcia, Thelma O.<br>301 E. Madison Avenue,<br>Harlingen, TX 78550 | Office of the District Counsel/HL<br>P.O. Box 1711<br>Harlingen, TX 78551 |

**Name: OVIEDO-SIFUENTES, JOSE MARTIN**          A44-778-282

Date of this notice: 09/04/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Lori Scialabba
Chairman

Enclosure

Panel Members:
    PAULEY, ROGER

U.S. Department of Justice                               Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:   A44-778-282 - Harlingen                                          Date: SEP 0 4 2002

In re:  OVIEDO-SIFUENTES, JOSE MARTIN

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Garcia, Thelma O.

ON BEHALF OF SERVICE: Dyann Bernstein, Assistant District Counsel


ORDER:

   PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7).

_____
FOR THE BOARD

[RECEIVED stamp: SEP 1 0 2002]