United States District Court
Southern District of Texas
FILED

APR 1 4 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOSE OVIEDO-SIFUENTES )
)
Petitioner )
)
v. )    CIVIL ACTION NO. B-02-198
)
C. ARENDEALE, DISTRICT )
DIRECTOR, ET AL., )
)
Respondents. )
)
_____ )

## RESPONDENTS' OBJECTIONS TO MAGISTRATE JUDGE'S
## CONSOLIDATED REPORT AND RECOMMENDATION

### STATEMENT OF THE CASE

**I.    CONSOLIDATED HABEAS PETITIONS AND COMMON CLAIMS**

This is one of nine cases that is subject to a consolidated Magistrate's Report and

Recommendation ("R&R").[1] These cases are all habeas petitions filed by criminal resident aliens

(Petitioners), challenging the legality of removal orders issued by the Board of Immigration Appeals

(BIA). The Petitioner in the present case, Oviedo-Sifuentes, and the alien Petitioners in the other

cases have all been found removable, ineligible for immigration relief, or both for "conviction" of a

controlled substances offense or an "aggravated felony" as a "drug trafficking crime" based on their

---

[1] The nine cases are: Salazar Regino v. Trominiski, Civil Action No. B-02-45; Cantu-Delgadillo v. Trominiski, Civil Action No. B-02-114; Carrizalos-Perez v. Cabrera, Civil Action No. B-02-136; Sandoval-Herrera v. Cabrera, Civil Action No. B-02-138; Hernandez-Pantoja v. Ashcroft, Civil Action No. B-02-197; Oviedo-Sifuentes v. Ashcroft, Civil Action No. B-02-198; Lucio v. Ashcroft, Civil Action No. B-02-225; Rodriguez-Castro v. Ashcroft, Civil Action No. B-02-228; Rangel-Rivera v. Ashcroft, Civil Action No. B-03-002.

Texas deferred adjudications of guilt,[2] or convictions following a guilty plea or trial, of felony drug possession under Texas law.  Primarily, Petitioners are raising the following two challenges to their removal orders.

First, most if not all Petitioners are challenging the finding that they have a "conviction" for immigration purposes within the meaning of the Immigration and Nationality Act (INA).  See Magistrate's Report and Recommendation (R & R) at 30-35. The INA defines a "conviction" as, among other things, "a formal judgment of guilty" or in the alternative "a plea of guilty" and "some form . . . restraint on the alien's liberty." See 8 U.S.C. § 1101(a)(48).  Petitioners claim that as a matter of statutory construction, equal protection, or uniform application of the law, the BIA must read an unstated "first offender" exception into the definition of "conviction" so that an alien's first time state offense of simple drug possession is not construed to be a conviction for immigration purposes. See R & R at 31-32. These are statutory-construction and constitutional questions of first impression in the Fifth Circuit. The Ninth Circuit has read this type of "first offender" exception into the statute.  Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). The BIA has rejected this reading and does not apply Lujan-Armendariz outside the Ninth Circuit. Matter of Salazar-Regino, 23 I & N Dec. 223, 2002 WL 339535 (BIA).  The Eighth and Eleventh Circuits have rejected the Ninth Circuit's Lujan-Armendariz construction in any case where an alien has been placed on probation for more than a year for a first-time state drug offense. Vasquez-Velezmoro v. U.S.I.N.S., 281 F.3d 693, 698 (8th Cir. 2001); Fernandez-Bernal v. Attorney General, 257 F.3d 1304, 1307 n.

---

[2] The Fifth Circuit has construed a Texas' deferred adjudication to come within the definition of a "conviction" for immigration purposes, holding that federal law controls and it is immaterial that this type of disposition is not deemed to be a conviction under state law if a defendant successfully completes his probation. Moosa v. INS, 171 F.3d 994, 997 and n. 1 (5th Cir. 1999).

4 (11th Cir. 2001). As shown in greater detail below, the Magistrate has disposed of the case on other grounds and not decided these issues.

Second, most if not all Petitioners have disputed that their Texas crimes of felony drug possession an "aggravated felony" as a "drug trafficking crime." See R & R at 33-35. Unlike the first issue, this is not a question of first impression in the Fifth Circuit. In United States v. Hernandez-Avalos, 251 F.3d 505, 509-10 (5th Cir. 2001), the Fifth Circuit held that a state felony drug possession conviction comes witin the plain meaning of the definition of an "aggravated felony/drug trafficking crime" for immigration purposes, and that Congress clearly intended aliens with such convictions to be removed. The BIA has announced that it must apply the Fifth Circuit's Hernandez-Avalos construction of "aggravated felony" in all removal cases arising in the Fifth Circuit. See Matter of Salazar-Regino, supra. Applying that construction to Petitioners' cases, the BIA concluded each Petitioner is removable, or ineligible for immigration relief, because of an aggravated felony/drug trafficking crime based on his conviction of felony drug possession under Texas law. Petitioners claim that this is an unconstitutional retroactive application of the judicial decision in Hernandez-Avalos, because at the time they pled guilty or were convicted the BIA did not consider their crimes to constitute an aggravated felony for immigration purposes (because the BIA was misreading the law). As shown in greater detail below, the Magistrate has adopted Petitioner's due process/retroactivity theory, contrary to the position of the Fifth Circuit which rejected such a claim in Hernandez-Avalos. R & R. 33-35, 36-40.

## II.    PROCEDURAL BACKGROUND

The Government moved to dismiss Oviedo's habeas petition and other habeas petitions for lack of habeas jurisdiction, on the ground that Petitioners are in the wrong Court, because judicial

review of their statutory and constitutional challenges to the finding that they are removable for (1) conviction (2) of an aggravated felony or drug crime is available in the court of appeals on direct review, and Petitioners are misusing habeas corpus to bypass that review.

The Magistrate denied the motions to dismiss for lack of jurisdiction and proceeded to conduct de novo evidentiary hearings on the issue of the legality of the BIA's removal orders, taking testimony from several Petitioners (Salazar-Regino, Cantu-Delgadillo, Carrizalos-Perez, Sandoval-Herrera, Rangel-Rivera) about their uncertainty about the immigration consequences of their pleas at the time they pled guilty or were convicted. The Government objected to these hearings, but was overruled.

Four of the nine consolidated cases were initially assigned to another judge of this Court. (Lucio, Oviedo-Sifuentes, Rodriguez-Castro, and Herndez-Pantajo). Two of these cases were held in abeyance over the Government's objection (Lucio and the instant matter), and therefore no habeas returns were filed. Respondents thus object to the proceedings in this matter following the order holding the matter in abeyance pending the outcome in <u>Salazar-Regino</u>.

These cases were noticed for hearing on January 24th and 25th before the present Magistrate, and were then transferred to this Court for disposition two days before the Magistrate signed the Consolidated Report and Recommendation.

## III.    REPORT AND RECOMMENDATION

On March 27, 2003, the Magistrate issued a consolidated Report and Recommendation in nine cases, including the present one. The Magistrate made individual fact findings in each case based on a combination of: (1) the facts shown in the Government's exhibits, returns, and administrative records of the removal or deportation proceedings, (2) extra-record testimony by Petitioners about

4

their subjective understanding of the law at the time of their pleas or convictions; and (3) the unsworn

oral arguments of Petitioners' counsel as to various Petitioners' understanding of the law or the

immigration warnings they received at the time of their pleas or convictions.

### A.    Individual Findings of Fact Supported by the Administrative Record

Oviedo is a native and citizen of Mexico, who was admitted to the U.S. at El Paso, Texas

on November 23, 1994 as an immigrant.  Administrative Record ("A.R.") 138.

On July 13, 1999 Oviedo was convicted, following a guilty plea in the 24th Judicial District

Court of Texas, Refugio County, for the offense of possession of cocaine, in the amount less than one

gram, a felony.  A.R. 113.  Adjudication of guilt was deferred and he was placed on community

supervision for a period of two years.  Id.

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to

Oviedo on July 13, 1999, charging that he was removable for having been convicted of a violation

of a law relating to a controlled substance pursuant to §237(a)(2)(B)(i) of the Immigration and

Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(B).  A.R. 138.  Following a hearing, on June 15,

2001,[3] the Immigration Judge determined that Oviedo was ineligible for cancellation of removal,

---

[3]Petitioner's immigration hearing commenced before the Immigration Judge on December
8, 1999. A.R. 61-63. The hearing was continued to allow petitioner to retain counsel, and
resumed on February 18, 2000, with petitioner represented by counsel. A.R. 65. At petitioner's
request, the hearing was continued until March 30, 2000, at which time counsel for petitioner
again requested and was granted a continuance to investigate "a citizenship link through the
father." A.R. 69. The hearing resumed on June 9, 2000 but was again continued to allow
petitioner to file an N-600. A.R. 76. On February 13, 2001, when the hearing resumed,
petitioner's counsel requested more time for "attorney preparation". A.R. 81. Finally, on June 15,
2001 petitioner requested another continuance, after stating that he did not have "evidence
together" to file an N-600. A.R. 89.

following his conviction, as he did not have the requisite time in the status of a lawful permanent resident. A.R. 54-56.

On September 4, 2002, the Board affirmed, without opinion, the results of the decision below, thus, the decision below was therefore the final agency determination. A.R. 2, citing §3.1(a)(7). The instant action for petition of writ of habeas corpus followed.

**B.    Common Rulings Of Law**

The Magistrate concluded that the court has habeas jurisdiction to decide Petitioners' constitutional challenges to the findings that they are removable based on a conviction of an aggravated felony or drug crime, reasoning that there is no decision "in any circuit hold[ing] that habeas review of constitutional claims [is] impermissible because such claims could have been, but were not raised on direct review in the circuit court." R & R at 35.

In regard to the merits of the habeas petitions, the Magistrate reserved  judgment on the statutory and constitutional issues of first impression as to whether a  "first-offender" exception should be read into the definition of a conviction for immigration purposes, as well as a claim by Petitioners that their removal or deportation orders violate international law and treaties. R & R 31-35. The Magistrate noted in dicta, however, that "Supreme Court and Fifth Circuit preceden[t] seemingly has foreclosed all of the[ latter] claims." R & R 35.

In regard to the issue of whether the Fifth Circuit's decision in Hernandez-Avalos applies to Petitioners' guilty pleas or convictions, the Magistrate ruled that it is a violation of due process to retroactively apply that decision to convictions prior to Hernandez-Avalos. R & R at 36, 37-38. The Magistrate acknowledged that under Hernandez-Avalos a state felony crime of simple drug possession comes within the meaning of an aggravated felony/drug trafficking crime. Id. at 38. He

6

also acknowledged that the Petitioners "would be deemed guilty of an aggravated felony and thus be
subject to removal with no form of relief available" if they pleaded guilty after the decision in
Hernandez-Avalos. Id. at 38. However, based on extra-record testimony in the evidentiary hearings,
the Magistrate reasoned that some Petitioners were "in doubt" about whether their felony drug
possession crimes constituted aggravated felonies, that there was "a great deal of confusion amongst
the criminal bar" about whether this was the case, and speculated that some Petitioners may not have
pleaded guilty had they known that their crimes would be construed to constitute deportable
aggravated felonies. Id. at 36, 38. The Magistrate also relied on representations of Petitioners'
counsel and found that "most if not all of [counsel's] clients had not been informed prior to their plea
that there would be immigration consequences." Id. at 39.

Given these findings, the Magistrate applied case law from the mid-1960's regarding the
retroactivity of judicial construction of criminal statutes, see Bouie v. City of Columbia, 378 U.S.
347, 358 (1964), and ruled that "[t]o apply Hernandez-Avalos to these Petitioners retroactively. . .
converts a disposition which, at the time they entered into pleas, carried little to no immigration
consequences into one that mandates deportation." R & R at 38. The Magistrate ruled that this
"violates Due Process" because it is "retroactive application of a new construction of a statute," and
has the effect of making deportation "an additional penalty[]" for "the 'criminal offense.'" R & R at
37-38. The Magistrate also concluded that this was compounded by the fact that about half of the
aliens[4] in the consolidated cases received deferred adjudications of guilt, which the Magistrate noted

_____

[4] Sandoval-Herrera, Carrizales-Perez, Hernandez-Pantoja, Lucio, and Rodriguez-Castro.
R & R at 36 n. 34..

would not constitute a conviction under Texas law if probation were successfully completed. R & R at 36.[5]

For these reasons the Magistrate concluded that the BIA erred in retroactively applying the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos to Petitioners' convictions, and that the BIA is required to continue to apply its prior incorrect reading of the law, because that was the construction in effect when Petitioners pled guilty or were convicted. Id. at 39-40. Thus, the Magistrate ruled that Hernandez-Avalos applies prospectively, only to convictions postdating the decision. Id.

## OBJECTIONS TO FACT FINDINGS

### A.      The Report Mischaracterizes the Facts Regarding Petitioner

First, Respondent objects to the R&R's reference to facts outside the record evidence related to petitioner. For example, the R&R states petitioner's "father and two minor children are United States citizens and his mother and seven siblings are all LPRs. He has a history of steady employment and supports his dependents." R&R at 17.

The R&R repeats statements in the Petitioner's habeas return and contains speculation not in the record, new facts not present in the record but taken de novo during hearings. As the Supreme Court has recently made clear, review of the legality of a removal order is limited to the administrative record that was before the Board and served as the basis of the removal order. INS v. Ventura, 123 S.Ct. 353, 355-56 (2002); see also §242(b)(4)(A) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1252(b)(4)(A). Because a district Court sitting in habeas may

---

[5]  The Magistrate Judge ignored that the Fifth Circuit has held that a Texas deferred adjudication of guilt constitutes a "conviction" for federal immigration purposes. Moosa, 171 F.3d at 994-97.

8

not take evidence de novo, but must rely upon the administrative record before it, the "facts"

underlying the R&R which are the unsupported averments of Petitioner's counsel or contradicted

by the record are erroneous and contribute to the overall error of the R&R.

**B.     Facts as Alleged by the Petitioner as and Found by the R&R**

The R&R's statement of the facts closely mirror petitioner's recitation of the facts, as

enumerated in the Petition for the writ of habeas corpus, and both contain irrelevant facts, facts

not in the administrative record, and other misstatements.

**Irrelevant Facts**. The R&R states that "it is hard for this Court to believe that each one

of the named petitioners would have pleaded guilty to their simple possession charges if they

knew that mandatory deportation would commence thereafter, especially given their extensive

family and employment ties to the United States." R&R at 38-39. It is unclear how the equities

of the Petitioner's family ties and employment have any relevance on the legal status of Petitioner's

drug conviction for possession of cocaine.

**Factual Omissions**. Both the R&R and the Petition for Habeas Corpus contain

Petitioner's assertion that "Oviedo's deferred adjudication does not constitute a conviction."

Habeas at 4; R&R at 19.

The R&R ignores the undisputed fact that when Oviedo entered his guilty plea, on July 13,

1999, the law in Texas under U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997) held that for

sentencing guideline purposes a state drug offense that is classified as a felony under state law is

an aggravated felony, even if it is punishable as a misdemeanor under federal law. On the issue of

whether his deferred adjudication was a "conviction" for immigration purposes within the meaning

of the 1996 statute defining that term (8 U.S.C. § 1101(a)(48)), the law in the Fifth Circuit on the

9

date of his conviction was as stated in <u>Moosa v. INS,</u> 171 F.3d 994 (5th Cir. 1999). That decision, three months prior to Oviedo's guilty plea, held that a deferred adjudication is a "conviction." <u>See</u> 171 F.3d at 1004-06.

Furthermore, the R&R accepts that if petitioner had been of aware of the immigration consequences of his guilty plea, he may have acted differently. However, the R&R ignores the record evidence that reveals that petitioner "was duly admonished of the consequences of said plea and it appearing to the Court that said Respondent is sane and that the Respondent is not influenced in making said pleas by any persuasion of fear or by and persuasion or delusive hope of pardon..." A.R. 114. Petitioner's signature appears on this document, dated July 13, 1999, which is part of the record evidence. A.R. 117.

The R&R also fails to mention that, since 1985, it has been the law in Texas that, before a plea of guilty or nolo contendere may be accepted by the criminal court, the Respondent **SHALL** be admonished that, if he or she is not a United States citizen, such a plea for the offense charged "may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." <u>Tex. Code of Crim. Proc. Ann.</u> art. 26.13(a)(4) (Vernon 1989 & Supp. 2002). Failing to do so is reversible error. <u>See Morales v. State,</u> 838 S.W. 2d 272 (App. 8 Dist. 1992). Under Texas law, Oviedo *was* aware that his conviction placed his continued residence in this country in jeopardy, perhaps forever, at the time he entered his plea and the criminal court accepted the plea. The administrative record contains nothing to support the assertion that petitioner made an un-informed guilty plea. The R&R apparently accepts at face value the assertions of petitioner's counsel as "fact" while ignoring evidence in the record to the

contrary, and if petitioner is attempting a collateral attack on his guilty plea, such is impermissible in a habeas corpus proceeding.[6]

**Misstatements of Fact**. Given the fact that no evidence in the record supports petitioner's argument that he pled guilty and "relied" upon the lack of adverse immigration consequences - and in light of the overlooked evidence in the record that petitioner pled guilty because he was guilty and was aware of the immigration consequences, it is, upon this record, a misstatement of fact that appears to have misled the Magistrate Judge. The R&R states that "Petitioners were unaware that their past acts would be penalized in the present, thus their Procedural Due Process Rights were violated by the Board's action in their cases." R&R at 35-36. Elsewhere, the R&R states that "[t]he attorney for the Petitioner's proffered to the Court that most if not all of her clients had not been informed prior to their plea that there would be immigration consequences." R&R at 40. The record directly refutes that statement, and neither the petitioner nor the R&R cites contrary record evidence.

In his habeas petition, petitioner asserts that "in the Ninth Circuit he would not have been subject to removal at all whereas in the Fifth Circuit he is considered to have been convicted of an aggravated felony and is ineligible for any form of relief." Habeas Petition at 6. First, (as discussed in detail, below) the law of the Ninth Circuit or any other, did not apply to petitioner, whether harsher or more favorable to him, as is the case in many instances under our state/federal system. Further, Respondent was denied the opportunity to file a return in this matter, which had been ordered held in abeyance, thus was unable to correct this misstatement, see objection, above.

---

[6]See A.R. 94-95, discussing petitioner's attempt to collaterally attack his state court conviction in his immigration hearing.

As noted, Oviedo was never charged as an aggravated felon, he was charged with a controlled

substance violation.  A.R. 138.  The Immigration Judge later determined that he was ineligible for

relief based on his controlled substance conviction, on July 13, 1999, five years after his entry as

an immigrant.  A.R. 54-56.

## OBJECTIONS TO RULINGS OF LAW

**I.     THE MAGISTRATE ERRED IN FINDING JURISDICTION OVER THESE HABEAS PETITIONS.**

        The Magistrate's ruling that this court has habeas jurisdiction to review Petitioners' statutory

and constitutional challenges to the findings of removability for conviction of an aggravated felony

or drug crime is clearly erroneous for the following reasons.

        First, the Fifth Circuit has held for several years that there is no habeas jurisdiction to review

statutory or constitutional challenges to deportation orders where review is available in the court of

appeals by means of a petition for direct review. Rivera-Sanchez v. Reno, 198 F.3d 545, 547 (5th Cir.

1999) ("as we have stated. . . habeas jurisdiction exists only where 'challenges [to deportation orders]

cannot be considered on direct review by the court of appeals;"); Requena-Rodriguez v. Pasquerell,

190 F.3d 299, 305 (5th Cir. 1999) (habeas jurisdiction exists to review "statutory and constitutional

challenges if those challenges cannot be considered on direct review"). While these cases pertain to

habeas review of deportation orders, the same reasoning applies with equal force for habeas review

of removal orders.  Congress has directed that review of such orders is to take place in the courts of

appeals by means of a petition of direct review.  8 U.S.C. § 1252.  To permit aliens to misuse habeas

corpus to circumvent that review and delay their removal is clearly not proper, is a waste of scarce

judicial resources, and frustrates the orderly scheme of review that Congress has created for removal

orders.

Second, the law is clear that direct review in the court of appeals is available for the statutory and legal challenges that Petitioners raised in these habeas petitions. It is clear that the court of appeals has jurisdiction to review what constitutes a conviction for immigration purposes. See Moosa, 171 F.3d at 1000-02 (direct review of whether deferred adjudication constitutes a conviction for immigration purposes). The court of appeals also has jurisdiction to review Petitioners' statutory and constitutional claims regarding a "first offender" exception to the definition of a conviction. Indeed these claims have already been reviewed in the Eighth, Ninth, and Eleventh circuits by means of petitions for direct review. See Lujan-Armendariz v. INS, 222 F.3d at 745-48; Vasquez-Velezmoro, 281 F.3d at 698; Fernandez-Bernal, 257 F.3d at 1307. It is also well established that the question whether an alien has an aggravated felony for immigration purposes is an issue that the court of appeals has direct review jurisdiction to decide. See, e.g., Chowdhury v. INS, 249 F.3d 970 (9th Cir. 2001) (construing whether conviction for money laundering constitutes an aggravated felony rendering alien deportable); Lopez-Elias v. Reno, 209 F.3d 788 (5th Cir. 2000), cert. denied 531 U.S. 1069 (2001) (construing whether conviction for burglary of vehicle with intent to commit theft is aggravated felony rendering alien deportable).

Third, the Magistrate erred in concluding that there are no Circuit decisions postdating the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001) (finding habeas jurisdiction to review a statutory challenge to a removal order where direct review in court of appeals was not available), which hold that habeas review is impermissible because claims could have been, but were not raised on direct review. R & R at 35. Post- St. Cyr, the Ninth Circuit has held that there is no habeas jurisdiction to review claims that could have been, but were not raised on direct review. See

Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001) (reiterating that there is no habeas jurisdiction to review a removal order where alien has failed to exhaust his judicial remedy of direct review).

Fourth, the Magistrate overlooked the fundamental principle that "the extraordinary nature of the writ [of habeas corpus] . . . should not be resorted to until other more conventional remedies have failed." Mason v. Ciccone, 531 F.2d 867, 868, 870 (8th Cir. 1976). Therefore, as a prudential matter, aliens must exhaust their judicial remedies before seeking review of their removal or deportation orders by habeas corpus. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001). As shown above, Petitioners did not exhaust their judicial remedies in these cases. Direct review for their legal claims was available in the court of appeals. Petitioners have circumvented that review and instead filed these habeas petitions. In this situation, they are not entitled to habeas review, and the court should dismiss the petitions for lack of jurisdiction.

In sum, since direct review was available in the court of appeals for Petitioners' statutory and legal challenges to their removal orders, there is no habeas jurisdiction to review these petitions, and the Magistrate erred in finding jurisdiction exists. See generally Rivera-Sanchez, 198 F.3d at 547; Requena-Rodriguez, 190 F.3d at 305.

## II. THE MAGISTRATE ERRED IN TAKING ADDITIONAL TESTIMONY AND CONSIDERING EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORDS.

For the following reasons the Magistrate clearly erred as a matter of law in conducting evidentiary hearings and considering new testimony by some Petitioners as to their understanding of the law at the time of their pleas.

First, the Magistrate erred in taking new evidence, because the scope of review of removal or deportation orders in habeas corpus is limited to pure questions of law. See 8 U.S.C. § 2241(c) (authorizing habeas corpus only where a person is being held in custody in "violation of the

14

Constitution or laws of the United States") (emphasis added); INS v. St. Cyr, 533 U.S. 289, 306

(2001) (habeas corpus traditionally has not been available to review factual determinations made by

the Executive Branch in deportation cases); Carranza v. INS, 277 F.3d 65, 73 n. 6 (1st Cir. 2002)

(only "[p]urely legal questions" in deportation orders are subject to habeas review and courts may not

"second-guess[] the [Board's] factual findings"); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999)

("only questions of pure law [in deportation orders] will be considered on § 2241 habeas review.

Review of factual or discretionary issues is prohibited.").

Second, the Magistrate erred in considering this new evidence because the Supreme Court

has made clear that review of deportation or removal orders is limited to the administrative record

and legal arguments that were actually presented and considered by the agency below. INS v.

Ventura, 123 S.Ct. 353, 355-56 (2002). The testimony by several Petitioners as to their subjective

understanding of the law at the time of their plea is not evidence that was in the removal or

deportation proceedings below. Therefore it could not properly be considered by the Magistrate in

reviewing the orders in these cases.

Third, the Magistrate erred in considering this new evidence, because Congress has expressly

directed that review of removal orders is limited to "the administrative record on which the order of

removal is based." INA Section 242(b)(4)(A) of the Act, 8 U.S.C. §1252(b)(4)(A). This is consistent

with fundamental principles of administrative law, which limit judicial review of administrative

decisions to the record before the agency at the time of its decision. The Magistrate's conduct of

evidentiary hearings and consideration of extra-record testimony is thus contrary to statute and black-

letter administrative law.

15

Fourth, the Magistrate erred in considering this new evidence, because the Fifth Circuit has made crystal clear that exhaustion of administrative remedies is a prerequisite to habeas review of a removal order. Goonsuwan v. Ashcroft, 252 F.3d 383 (5th Cir. 2001); see also 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right ...."). Any evidence or testimony considered by the Magistrate is new evidence that was not presented to the agency below, and is thereby evidence as to which the Petitioners failed to exhaust their administrative remedies.

Fifth, the Magistrate erred in considering the new evidence of testimony by some Petitioners, as well as Petitioners' counsel's unsworn representations that several Petitioners were not given immigration warnings at the time of their pleas, because the issue of whether it is proper for the BIA to apply the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos retroactively to Petitioners' pleas and convictions is a question of law to be resolved by reference to Supreme Court and Fifth Circuit precedent. Counsel's unsworn representations that immigration warnings were not given at the time of the pleas (which misrepresented the facts in several cases), and the testimony by several Petitioners about their confusion as to the meaning of the law at the time of their pleas are immaterial to the legal analysis of this issue. As shown in the discussion of the governing Fifth Circuit and Supreme Court case law, judicial decisions apply retroactively. In addition, as shown below, in Hernandez-Avalos the Fifth Circuit already rejected the type of due process challenge Petitioners raised in their habeas petitions. Accordingly the Magistrate should have applied the existing law of the Fifth Circuit, which has rejected the kind of due process challenge to retroactive application of the construction of an aggravated felony that Petitioners make, and erred by conducting evidentiary hearings and considering extra-record testimony in resolving these cases.

16

### III. THE MAGISTRATE ERRED IN RULING THAT IT VIOLATES DUE PROCESS TO APPLY THE FIFTH CIRCUIT DECISION IN HERNANDEZ-AVALOS RETROACTIVELY TO THESE CASES.

#### A. Background Of BIA's Misconstruction Of Aggravated Felony And Fifth Circuit Decision In Hernandez-Avalos Clarifying The Correct Meaning.

In the INA Congress has defined an "aggravated felony" to mean, inter alia, "a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43((B);[7] Hernandez-Avalos, 251 F.3d at 507. Section 924(c) of Title 18, in turn, defines the term "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 810 et seq.). . . ." 18 U.S.C. § 924(c)(2); Hernandez-Avalos, 251 F.3d at 507.

As the Fifth Circuit has concluded in Hernandez-Avalos, from 1995 onwards, the BIA misinterpreted this definition to mean a state offense that would be "punishable as a felony" under the Controlled Substances Act, if it were a federal offense. Hernandez-Avalos, 251 F.3d at 508-09; see Matter of L-G-, 21 I & N Dec. 89 (BIA 1995), holding modified by Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002). Based on this misreading of the law, the BIA erroneously construed state

---

[7] In 1996 amendments Congress directed that the INA's definition of "aggravated felony" is to be applied to "any actions taken on or after" the 1996 amendments "regardless of when the conviction occurred." See Section 321(a) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. 104- 208, 110 Stat. 3009, 3009-627 (1996). Accordingly the statutory definition of "aggravated felony" applies retroactively, regardless of the date of a plea or conviction. See, e.g., Aragon-Ayon v. INS, 206 F.3d 847 (9th Cir. 2000).

felony drug possession not to come within the definition of an "aggravated felony/drug trafficking crime" for immigration purposes. Hernandez-Avalos, 251 F.3d at 508-10.

In the mean time, in federal sentencing cases, the Fifth Circuit and five other circuits reached a contrary conclusion. See Hernandez-Avalos, 251 F.3d at 508. These courts construed the definition of "aggravated felony/drug trafficking crime" to mean an offense that is (1) punishable under the Controlled Substances Act and (2) a "felony" under the law of the convicting jurisdiction. Id. Under this construction a crime of state felony drug possession constituted an "aggravated felony/drug trafficking crime" for sentencing purposes.[8]

The BIA recognized the inconsistency between its construction and that of the Circuits in federal sentencing cases, but took the position that the definition of an "aggravated felony/drug trafficking crime" should be read to have two different meanings depending on the context (immigration proceedings versus sentencing proceedings). See Hernandez-Avalos, 251 F.3d at 508-10; Matter of K-V-D-, 22 I & N Dec. 1163 (BIA 1999), overruled by Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002). The Second Circuit agreed with this dual reading of what constitutes an aggravated felony. Aguirre v. INS, 79 F.3d 315, 317 (2d Cir. 1996),

The Fifth Circuit did not. In 2001, in Hernandez-Avalos, the Fifth Circuit clarified the correct meaning of the definition an "aggravated felony/drug trafficking crime" for immigration purposes. 251 F.3d at 508-10. The Fifth Circuit held that the BIA had been misreading the definition and that "the statutory language is clear – and is the same – regardless of whether it is applied in sentencing or

---

[8] See United States v. Ibarra-Galindo, 206 F.3d 1337, 1339-40 (9th Cir.2000); United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999); United States v. Hinojoa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997); United States v. Cabrera-Sosa, 81 F.3d 998, 1000 (10th Cir. 1996); United States v. Restrepo-Aguilar, 74 F.3d 361 364-66 (1st Cir. 1996); United States v. Polanco, 29 F.3d 35, 38 (2d Cir. 1994).

immigration cases." Id. at 509. The Fifth Circuit concluded that "*the plain language of the statutes*

'*indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony'*

*a drug crime that is a felony under state law.*" Id. at 510 (emphasis added). It also concluded that

Congress has always intended aliens with state felony drug possession crimes to be removable as

aggravated felons:

> [W]e cannot ignore the fact that the relevant statutes – when properly interpreted –
> express Congress' intent that aliens with drug convictions that are felonies under state
> law should be removed . . . .

Id. at 510. Thus, the Fifth Circuit concluded that the definition of "aggravated felony/drug trafficking

crime" has always been intended by Congress to mean a state felony offense of simple drug

possession. Id. The alien in Hernandez-Avalos argued that it was a violation of due process to apply

the Fifth Circuit's construction of aggravated felony retroactively to the alien's 1999 guilty plea to

state felony drug possession, on the theory that at the time of that plea it has not been considered an

aggravated felony under the BIA's erroneous interpretation. Id. at 508. The Fifth Circuit rejected

this contention. Id. at 508-9. It concluded that due process does not require an alien to continue to

have the benefit of the BIA's prior misinterpretation of the law, and that it is not fundamentally unfair

to treat the alien as an aggravated felon "because he should have [had] the benefit of an agency's

erroneous interpretation of applicable law." Id.

Following the decision in Hernandez-Avalos, the BIA issued a published decision in Matter

of Salazar-Regino, supra, (one of the consolidated cases subject to the R&R and Recommendation)

correcting the BIA's prior misreading of the definition of an aggravated felony and applying the

correct definition set forth in Hernandez-Avalos to removal cases arising in the circuit. [9]

_____

[9] The BIA also corrected its interpretation nationwide, ruling that the definition of what
constitutes an "aggravated felony/drug trafficking crime" for removal purposes coincides with the

As shown above, the Magistrate has now ruled that:   (1) it is a violation of due process for the BIA to apply the Fifth Circuit's correct interpretation of aggravated felony in Hernandez-Avalos retroactively to convictions or criminal dispositions occurring before that decision, (2) the BIA must continue to apply its prior incorrect  interpretation of aggravated felony to all pleas or convictions that occurred while that interpretation was in effect, and (3) the BIA may apply the correct interpretation of aggravated felony in Hernandez-Avalos prospectively only, to pleas or convictions occurring after that decision. R & R at 36-40.

**B.      The Magistrate's Ruling Is Contrary To Rules Of Judicial Retroactivity, Stare Decisis, And Binding Precedent, And Applies A Due Process Analysis That Has Been Rejected By The Fifth Circuit In Hernandez-Avalos.**

First, the Magistrate has clearly erred as a matter of law, because he has failed to understand a fundamental principle of common law  – namely the rule of "judicial retroactivity." As the Fifth Circuit has stated: "[t][he general principle [is]  that statutes operate prospectively and judicial decisions apply retroactively" and this has been the law "for near a thousand years." Hulin v. Fibreboard Corp., 178 F.3d 316, 329 and n. 5 (5th Cir. 1999), quoting Kuhn v. Fairmont Coal Co., 215 U.S. 349, 371 (1910) (Holmes, J., dissenting).   Judges "'say what the law is'" not "what the law shall be" like legislatures. Id. at 329 n. 5, quoting Harper v. Virginia Department of Taxation, 509 U.S. 86, 107 (1993) (Scalia, J., concurring).   For hundreds of years the common law has "viewed retroactivity as an inherent characteristic of the judicial power, a power not delegated to pronouce a new law, but to maintain and expound the old one." Harper, 509 U.S. at 107, quoting 1 W.Blackstone, Commentaries 69 (1795) ("Blackstone"). "Even when a 'former determination is ...

---

law of the federal circuit in which the case arises. Matter of Yanez-Garcia, supra.

contrary to reason or . . . law,' a judge overruling that decision would 'not pretend to make a new law, but to vindicate an old one from misrepresentation." Id.

As the Supreme Court has recently stated, *"construction of a statute is an authoritative statement of what the statute meant before[,] as well as after[,] the decision of the case giving rise to that construction."* Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994) (emphasis added). Thus, when a court, like the Fifth Circuit in Hernandez-Avalos, construes the meaning of a statute through adjudication, it is "say[ing] what the law is," and is "mak[ing] [law as judges make it, which is to say as though they were 'finding' it — discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be." James B. Beam Distilling Company v. Georgia, 501 U.S. 529, 546 (1991) (Scalia, J., concurring).

Under the case law of the Supreme Court and Fifth Circuit, judicial decisions are to be applied retroactively, even where the decision constitutes a "clear break" with the previous law. James Beam, 501 U.S. at 537-38; Hulin, 178 F.3d at 331-32. This applies to both civil and criminal cases. Harper, 509 U.S. at 97; Hulin, 178 F.3d at 331. This also applies regardless of a party's reliance on former law or the harm that any reliance might cause. Harper, 509 U.S. at 97; Hulin, 178 F.3d at 331.

As the Supreme Court has stated, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open . . . and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper, 509 U.S. at 97. "[W]e can scarcely permit 'the substantive law [to] shift and spring' according to the 'particular equities of [a party's] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." Id. A court "has

21

no more . . . authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." Id.[10]

Given the foregoing, the Magistrate's ruling that it violates "due process" to apply the Fifth Circuit's decision in Hernandez-Avalos retroactively to Petitioners' cases is clearly erroneous, because it violates Supreme Court and Fifth Circuit case law holding that judicial decisions always apply retroactively. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995); Harper, 509 U.S. at 97; Hulin, 178 F.3d at 332-33.

Second, the Magistrate's ruling is also clearly erroneous because it violates stare decisis, which make the decisions of the Fifth Circuit binding precedent in all cases within the circuit, unless reversed on rehearing en banc, overruled by the Supreme Court, or changed by Congress. See generally Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001); Payne v. Tennessee, 501 U.S. 808, 828 (1991). Under stare decisis, neither the Magistrate, this Court, nor the BIA may decline to apply the law as announced by the court of appeals once it has ruled on a controlling legal issue. See Hernandez-

---

[10] The Fifth Circuit has discussed the law regarding "judicial" or "adjudicative" retroactivity in Hulin, 178 F.3d at 330-32. That decision shows that for 30 years from the mid-1960's to the mid-1990's the Supreme Court applied a discretionary rule of judicial "prospectivity," permitting some judicial decisions to apply prospectively only. Hulin, 178 F.3d at 330-32; see Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971) (discretionary rule permitting civil decisions to be applied prospectively only); Linkletter v. Walker, 381 U.S. 618 (1965) (discretionary rule permitting criminal decisions to be applied prospectively only). In the civil context, a judicial decision could be applied prospectively only if the decision "established a new principle of law, if such a limitation would avoid substantial inequitable results, and if retrospective application would not retard the purpose and effect of the new rule." Hulin, 178 F.3d at 330-32. This same type of discretionary prospectivity also applied to administrative adjudications. See MacDonald v. Watt, 653 F.2d 1035 (5th Cir. 1981).
However, between 1987 and 1995 the Supreme Court rejected this concept of judicial prospective and as the Fifth Circuit has stated, "evidently . . . has [now] concluded that [the] departure from traditional retroactivity doctrine proved unsatisfactory." Hulin, 178 F.3d at 332. The Supreme Court has "return[ed] to the general rule of adjudicative retroactivity, leaving only an indistinct possibility of the application of pure propspectivity in an extremely unusual and unforeseeable case." Hulin, 178 F.3d at 332.

Avalos 251 F.3d at 508 n. 2 ( "[i]f a circuit courts interpretation of 'aggravated felony' is different from the BIA's interpretation, the [agency] is bound by the decision of the circuit court in removal proceedings 'arising in' that circuit."). Binding authority must be followed unless and until overruled by a body competent to do so.  The construction of aggravated felony in Hernandez-Avalos is still sound law. It has not been overruled. It is directly on point and constitutes the binding construction of aggravated felony in the Fifth Circuit.  As such the BIA, the Magistrate, and this court are required to apply Hernandez-Avalos to the facts in Petitioners' cases.

Third, the Magistrate's ruling is also clearly erroneous because he has applied a due process/retroactivity analysis that the Fifth Circuit has already rejected in Hernandez-Avalos.  The Magistrate's analysis is that it is a violation of due process to apply the correct construction of aggravated felony in Hernandez-Avalos retroactively to Petitioners' cases, because under the BIA's misreading of the law at the time Petitioners' plead guilty or were convicted, their state felony drug possession crimes were not considered to be aggravated felonies. R & R 36-40. The Fifth Circuit has already rejected such a claim in Hernandez-Avalos. There, the Fifth Circuit held that  it does not violate due process, and is not fundamentally unfair, to remove an alien based on the correct construction of aggravated felony, even if his crime was not considered to be an aggravated felony at the time of his plea because of the BIA's misreading of the law.   521 F.3d at 508  ("[w]e see no reason why . . . it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law").

Fourth, the Magistrate's ruling is erroneous because he has overlooked that in Hernandez-Avalos, the Fifth Circuit did essentially what the BIA has done in Petitioners' cases, "retroactively" apply  the correct construction of an "aggravated felony/drug trafficking crime" to an alien's 1999 guilty plea to felony drug possession, which was not considered to be an aggravated felony under the

23

BIA's erroneous interpretation at the time of the plea. See 521 F.3d at 508-10. If the Fifth Circuit retroactively applied its construction of aggravated felony in this manner, it was certainly not a violation of due process for the BIA to apply the construction in the same manner. The Magistrate has also overlooked that this is not "retroactive," in the sense of applying a new rule of law to past events. Hernandez-Avalos simply clarifies what the plain meaning of an "aggravated felony/drug trafficking crime" has been all along – i.e., that it means a state felony drug possession crime. 251 F.3d at 510. As the Fifth Circuit stated: "*[w]e cannot ignore the fact that the relevant statutes – when properly interpreted – express Congress's intent that aliens with drug convictions that are felonies under state law should be removed. . . .*" Id. (emphasis added) The fact that the BIA was misreading the definition of aggravated felony at the time Petitioners' pled guilty or were convicted following trial does not give them any right to now avoid the correct application of the law. The law must be enforced as written and as intended by Congress. See id. at 510.

Fifth, the Magistrate's ruling that to apply Hernandez-Avalos in these cases would make deportation *"an additional penalty[]"* for "*the 'criminal offense'*" is a clear misstatement of law. R & R at 36, 38 (emphasis added). The Supreme Court has repeatedly made clear that deportation is not an added "punishment" or "penalty" for a criminal conviction.

> While the consequences of deportation may assuredly be grave, they are not imposed as a punishment. [citation omitted]. . . . Even when deportation is sought because of some [crime] the alien has committed, . . . the alien is not being punished for that act (criminal charges may be available for that separate purpose) but is merely being held to the terms under which he was admitted. And in all cases, deportation is necessary in order to bring to an end an ongoing violation of United States law.

Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 491(1999). See also Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) ("[d]eportation, however, severe its consequences, has been consistently classified as a civil rather than criminal procedure"). Deportation

24

is not punitive. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984); LeTourneur v. INS, 538 F.2d 1368, 1370 (9th Cir. 1976) ("Deportation is not criminal punishment.").

Sixth, the Magistrate's concern about Petitioners' lack of notice about the deportation consequences of their guilty pleas or convictions pertains to the validity of their guilty pleas, not to whether Congress intended their crimes to be aggravated felonies, which is the issue resolved in Hernandez-Avalos. By testifying or arguing that they did not fully understand the immigration consequences of their pleas, Petitioners and their counsel are improperly attempting to collaterally challenge the validity of their state convictions. This is an issue for state courts to decide, not for this court or the Magistrate to consider in reviewing Petitioners' removal or deportation orders. Moreover, under Texas law an alien's lack of notice about the collateral immigration consequence of his plea does not render the plea involuntary or unintelligent. See State v. Jiminez, 987 S.W. 2d 886 (Tx. Ct. App. 1999).

Seventh, the Magistrate has clearly erred in concluding that it was improper to apply Hernandez-Avalos retroactively because several of the Petitioners have deferred adjudications that would not qualify as convictions under Texas law if probation were successfully completed. The Fifth Circuit has ruled that a Texas deferred adjudication of guilt constitutes a "conviction" for immigration purposes regardless of whether it is a conviction under Texas law. Moosa, 171 F.3d at 1000-02.

Finally, as a matter of common sense, the Magistrate's ruling is clearly wrong. Hernandez-Avalos is the law of the Circuit. It decides the correct meaning of an aggravated felony. For the Magistrate to refuse to allow the BIA to apply the correct meaning of the law and require the BIA to continue applying a reading of the law that is incorrect is unprecedented. The Magistrate is seeking to prevent the Executive Branch from enforcing the law as written by Congress, and to

25

require the Government to permit aliens to illegally remain in this country or receive immigration

benefits, in violation of the law as now construed by the Fifth Circuit. This is plainly wrong.

For these reasons the Magistrate has erred in ruling that it is a violation of due process for the

BIA to apply the construction of aggravated felony in Hernandez-Avalos to the facts of these cases.

## IV.    THE R&R'S STATEMENT REGARDING THE BOARD'S AFFIRMANCE WITHOUT OPINION IS INCORRECT

Finally, the R&R states that "there is no way to determine whether the Board gave

consideration to Oviedo-Sifuentes' arguments on appeal because it simply noted that it was affirming

the 'results of the decision below." R&R at 20. If the R&R faults the Board for its practice of

affirming without opinion, it is erroneous and Respondent objects on that basis. The Fifth Circuit

held in Soadjede v. Ashcroft, --F.3d– ,1093979 WL 2003 (5th Cir. Mar. 28, 2003):

> "This court has previously joined the majority of circuits in approving the authority of the
> BIA to affirm the immigration judge's decision without giving additional reasons. *Mikhael
> v. INS,* 115 F.3d 299, 302 (5th Cir.1997) (noting that, where the BIA affirmed without
> additional explanation, this court would review the immigration judge's decision); *see also
> Abdulai v. Ashcroft,* 239 F.3d 542, 549 n. 2 (3d. Cir.2001); *Giday v. INS,* 113 F.3d 230,
> 234 (D.C.Cir.1997); *Chen v. INS,* 87 F.3d 5, 7 (1st Cir.1996); *Prado- Gonzalez v. INS,*
> 75 F.3d 631, 632 (11th Cir.1996); *Urukov v. INS,* 55 F.3d 222, 227-28 (7th Cir.1995);
> *Alaelua v. INS,* 45 F.3d 1379, 1382-83 (9th Cir.1995); *Maashio v. INS,* 45 F.3d 1235,
> 1238 (8th Cir.1995); *Gandarillas-Zambrana v. BIA,* 44 F.3d 1251, 1255 (4th Cir.1995);
> *Arango- Aradondo v. INS,* 13 F.3d 610, 613 (2d Cir.1994)."

> "We hold that the summary affirmance procedures provided for in  8 C.F.R. § 3.1(a)(7)
> do not deprive this court of a basis for judicial review and that the procedures do not
> violate due process.

## CONCLUSION

For the foregoing reasons, the court should reject the Magistrate's R&R and

Recommendation, which contains numerous errors of fact and law, and should either (1) dismiss

these habeas petitions for lack of jurisdiction, or (2) if it finds jurisdiction, affirm the BIA's

application of <u>Hernandez-Avalos</u> to the facts, and return these cases to the Magistrate to make recommendations regarding the remaining legal issues that have not been decided.

In the alternative, pursuant to the federal transfer statute at 28 U.S.C. § 1631, this court has authority to transfer the lead case, <u>Salazar-Regino</u> (No. B-02-45), to the court of appeals and stay the remaining cases, pending resolution by that court of the common statutory and constitutional challenges to removability as an aggravated felon that these cases all raise. The transfer statute authorizes transfer for a case like <u>Salazar-Regino,</u> if this Court finds that: (1) the court of appeals would have been able to exercise jurisdiction on the date that the habeas petition was filed in the district court; (2) the district court lacks habeas jurisdiction over the case, and (3) the transfer is in the interests of justice. <u>See</u> 28 U.S.C. § 1631. In the Ninth Circuit, transfer has already been used in immigration cases like <u>Salazar-Regino's,</u> where the court of appeals is the proper forum for review of the legal challenges to a removal order that an alien seeks to raise, but instead he filed in the wrong forum, by filing a habeas petition in district court during the time period permitted for filing for direct review. <u>See</u> <u>Castro-Cortez, I.N.S.,</u> 239 F.3d 1037, 1046 (9th Cir. 2001).

   <u>Salazar-Regino</u> meets the requirements for transfer. First, the court of appeals would have been able to exercise jurisdiction on the date her habeas petition was filed. Salazar-Regino filed her habeas petition on March 8, 2002. This was within 30 days of the BIA's decision in her case (February 14, 2002). The habeas petition was therefore filed within the 30-day limit for filing for direct review in the court of appeals. <u>See</u> 8 U.S.C. § 1252 (b)(1).

   Second, as shown by the case law cited in the Objections to the Magistrate's jurisdictional ruling, under the current law of the Fifth Circuit, there is no habeas jurisdiction to consider Salazar-Regino's statutory and constitutional challenges to the finding that she is removable for

27

conviction of an aggravated felony based on her first-time state drug offense of felony drug possession, because review of these issues is available in the court of appeals. See, e.g., Requena-Rodriguez, 190 F.3d at 305 (habeas jurisdiction exists to review "statutory and constitutional challenges if those challenges cannot be considered on direct review."). See also Lujan-Armendariz, 222 F.3d at 745-48 (direct review of whether first-time state drug offense constitutes a conviction for immigration purposes); Lopez-Elias, 209 F.3d 789-90 (direct review of whether crime constitutes aggravated felony for purposes of deportation).

Third, the Court could find that transfer would be in the interests of justice because Salazar-Regino raises (1) statutory and constitutional issues of first impression as to an alien's removability for an aggravated felony based on a first-time drug offense of felony drug possession, and (2) a constitutional issue as to the retroactive application of the Fifth Circuit's definition of aggravated felony in Hernandez-Avalos, which it would be in the interests of justice, and the expeditious and orderly adjudication of the merits of the case, for the court of appeals to resolve on direct review. See Aquacate Consol. Mines, Inc. v. Deeprock, Inc., 566 F.2d 523 (5th Cir. 1978).

Entry of an order transferring Salazar-Regino to the court of appeals and staying the other cases would also be in the interests of judicial economy, because it would enable this court to avoid having to decide the purely legal issues raised by these habeas petitions, as well as the

28

jurisdictional issue of whether there is habeas jurisdiction, until after the court of appeals has decided these issues on transfer of <u>Salazar-Regino</u>.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

NANCY E. FRIEDMAN
Attorney
Office Of Immigration Litigation
Civil Division, U.S. Dept. Of Justice
P.O. Box 878 Ben Franklin Station
Washington DC 20044

Date:  April 14, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Objections to the Magistrate Judge's Consolidated Report and Recommendation was mailed via first class mail, postage prepaid to:

> Lisa S. Brodyaga, Esquire
> Refugio Del Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX  78586

on this 14th day of April, 2003.

LISA M. PUTNAM
Special Assistant United States Attorney